**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **MICHAEL F. DURANTE,** | **Civil Action No. 16-8949(SRC)** |
| **Petitioner,** | |
| **v.** | **OPINION** |
| **UNITED STATES OF AMERICA,** | |
| **Respondent.** | |

## I.     INTRODUCTION

This matter has been opened to the Court by Petitioner's filing of a motion pursuant to vacate, correct, or set aside sentence pursuant to 28 U.S.C. § 2255 ("Motion"). For the reasons explained in this Opinion, the Court conduct a hearing on Ground Four of the Motion and reserve judgment on that claim pending the outcome of the hearing. The Court will otherwise deny the Motion for the reasons stated in this Opinion and deny a certificate of appealability.

## II.     FACTUAL BACKGROUND[1] AND PROCEDURAL HISTORY

Petitioner was a physician with a practice in New Jersey. A federal sting operation revealed that he had been illegally selling prescriptions for oxycodone to two drug-distribution networks: one run by codefendant Andre Domando, and one by codefendant Dennis Abato. Both Domando and Abato ultimately cooperated with the Government.

In December 2011, Durante was charged by Superseding Indictment with conspiracy to distribute oxycodone and distribution of oxycodone. Durante moved to suppress evidence and to

---

[1] The factual background is taken from the available record, including Petitioner's criminal docket, the transcripts of pretrial hearings and the trial, the Presentence Investigation Report ("PSR"), as well as the facts recounted by the Third Circuit Court of Appeals in the decisions denying Petitioner's direct appeal and affirming the denial of his Rule 33 motion.

obtain certain information prior to trial. This Court held an evidentiary hearing limited to the search of a safe found in Durante's basement and Durante's post-arrest statements and ultimately denied all of Durante's motions.

In May 2013, after a multi-week trial held before this Court, a jury convicted Petitioner of one count of conspiracy to distribute oxycodone and fifteen counts of distribution of oxycodone. From the recordings played at trial, a jury could find that Petitioner knew Domando was reselling the prescriptions for a large profit. Petitioner was also captured on tape accepting $300 from Domando in exchange for prescriptions, as well as $100 for an extra prescription he sold to an undercover agent. Neither Domando nor Abato testified at trial; however, Abato's son testified that he delivered envelopes of cash to Durante in exchange for extra prescriptions. Evidence was also presented showing that Petitioner attempted to cover his tracks through false medical records.

On December 17, 2013, Petitioner was sentenced by this Court to 136 months of imprisonment on Count One and 136 months of imprisonment on Counts Three through Seventeen to run concurrently. *See* Crim. Dkt. No. 454, Judgment of Conviction. Petitioner then filed a direct appeal challenging several rulings made by this Court before and during trial, all of which the Third Circuit rejected. *See United States v. Durante*, 612 F. App'x 129, 130 (2015), *cert. denied*, 136 S. Ct. 537 (2015). In a separate opinion, the Third Circuit also affirmed the District Court's denial of Petitioner's motion for a new trial under Federal Rule of Criminal Procedure 33 based on allegations that the Government violated its obligations under *Brady v. Maryland*. *See United States v. Durante*, 689 F. App'x 692, 693 (2017).[2]

---

[2] Petitioner's co-defendants Lawrence Gebo, Martin Rinaldi, Michael Scherer, Marianna Colucci, Tristen Ambrosino, Daniel Lally, Melvin Fernandez, Michael Corrao, Gregory Gavini, Brian Renkart, and Andre Domando pleaded guilty and were sentenced on various dates in

Petitioner's § 2255 Motion is dated November 16, 2016, and was docketed on December 1, 2016. ECF No. 1. In his § 2255 Motion, Petitioner raises 10 grounds for relief. Grounds Three, Four, Five, Six, Seven, Eight, and Ten assert that his attorney, Ms. Fleming, provided ineffective assistance of counsel during pre-trial proceedings, at trial, during sentencing, and on direct appeal. In Grounds One, Two, and Nine, Petitioner contests his sentence, claiming that: (1) it is unfairly disproportionate to that of this co-defendants; (2) he was entitled to a 2-point reduction in the calculation of his Sentencing Guidelines; (3) he should receive credit from the Bureau of Prisons ("BOP") for time served on home confinement; and (4) the forfeiture portion of his sentence was excessive. The government answered the Motion on January 22, 2018. ECF No. 20. and Petitioner submitted his reply on August 13, 2018, ECF No. 28, and a supplemental brief on January 25, 2019. ECF No. 29. The matter is fully briefed and ready for disposition.

## III.    STANDARD OF REVIEW

Title 28, United States Code, Section 2255 permits a court to vacate, correct, or set aside a sentence

> upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such a sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack. . . .

28 U.S.C. § 2255.

A criminal defendant bears the burden of establishing his entitlement to § 2255 relief. *See United States v. Davies*, 394 F.3d 182, 189 (3d Cir. 2005). Moreover, as a § 2255 motion to vacate is a collateral attack on a sentence, a criminal defendant "must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Travillion*, 759 F.3d 281, 288 (3d Cir.

---

November 2013. Co-defendant Dennis Abato pled guilty and was sentenced in July 2014. Only Domando appealed, Appeal No. 13-4602; he voluntarily dismissed that appeal.

2014) (citing *United States v. Frady*, 456 U.S. 152, 166 (1982)). In considering a motion to vacate a defendant's sentence, "the court must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record." *United States v. Booth*, 432 F.3d 542, 545 (3d Cir. 2005) (internal quotation marks and citation omitted). "It is the policy of the courts to give a liberal construction to *pro se* habeas petitions." *Rainey v. Varner*, 603 F.3d 189, 198 (3d Cir. 2010).

The Court may dismiss the motion without holding an evidentiary hearing where the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief. *See* 28 U.S.C. § 2255(b); *Liu v. United States*, No. 11–4646, 2013 WL 4538293, at *9 (D.N.J. Aug. 26, 2013) (citing *Booth*, 432 F.3d at 545–46). Nevertheless, the Third Circuit has "repeatedly emphasized that 'bald assertions and conclusory allegations do not afford a sufficient ground for an evidentiary hearing' on a habeas petition." *Palmer v. Hendricks*, 592 F.3d 386, 395 (3d Cir. 2010) (citations omitted).

There are additional important limitations on motions brought pursuant to § 2255. Notably, § 2255 "generally 'may not be employed to relitigate questions which were raised and considered on direct appeal.'" *United States v. DeRewal*, 10 F.3d 100, 105 n.4 (3d Cir. 1993) (citation omitted). Nor is § 2255 relief a substitute for a direct appeal. *See United States v. Frady*, 456 U.S. 152, 165 (1982); *see also Bousley v. United States*, 523 U.S. 614, 621–22 (1998). Accordingly, a defendant whose § 2255 motion raises a claim he failed to raise on appeal must show both "cause" for that failure and "actual prejudice" resulting from the claimed error. *Frady*, 456 U.S. at 167–68; *see United States v. Essig*, 10 F.3d 968, 979 (3d Cir. 1993). Section 2255 claims are also limited to issues pertaining to a petitioner's custodial status and cannot be invoked to challenge non-custodial aspects of their sentences. *See United States v. Ross*, 801

F.3d 374, 380 (3d Cir. 2015) ("monetary component of a sentence" does not satisfy the "in custody" requirement of federal habeas statutes).

IV.    ANALYSIS

a. **Ineffective Assistance of Counsel Claims (Grounds Three, Four, Five, Six, Seven, Eight, and Ten)**

Before a petitioner can establish that he was denied his Sixth Amendment right to the effective assistance of counsel, he must make a two-part showing: (1) that his counsel's performance was so deficient that the attorney was not functioning as the professional counsel guaranteed by the Sixth Amendment; and (2) that he was prejudiced by his attorney's deficiencies, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694 (1984).

Under *Strickland*, counsel "is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. Thus, to prove deficiency, the petitioner must show that counsel's performance "fell below an objective standard of reasonableness under prevailing professional norms." *Buehl v. Vaughn*, 166 F.3d 163, 169 (3d Cir. 1999). Courts evaluate the reasonableness of counsel's performance "from counsel's perspective at the time of the alleged error and in light of all the circumstances." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986). Ultimately, it is the petitioner who bears the burden of demonstrating that counsel's representation was deficient. *Id.*

Even where a petitioner is able to show that counsel's representation was deficient, he must still affirmatively demonstrate that counsel's deficient performance prejudiced the petitioner's defense. *Strickland*, 466 U.S. at 692–93. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693.

1. **Ineffective Assistance during Plea Negotiations (Ground Four)**

Petitioner asserts that his attorney was ineffective during plea negotiations. He asserts that his counsel met privately with government regarding the possibility of negotiating a guilty plea to a financial crime, but it was not accomplished, and Petitioner believes that the government made a plea offer during this meeting that was not communicated to him by counsel. After this meeting, Petitioner believed he had no choice but to go to trial. Petitioner further states that counsel never discussed the pros and cons of pleading guilty versus going to trial, including the financial implications of his sentence.[3] ECF No. 1, at 15-16. In his reply, Petitioner elaborates that counsel underestimated his maximum sentencing exposure, which prevented him from making an informed decision about whether to go to trial, and that Petitioner did not understand what his maximum exposure was until he received the first draft of the PSR. ECF No. 28, Reply at 3.

"Defendants are entitled to the effective assistance of competent counsel" during plea negotiations. *Lafler v. Cooper*, 566 U.S. 156, 162 (2012) (quotation omitted). Consequently, "[i]f a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it." *Id.* at 168. "If that right is denied, prejudice can be shown if loss of the plea opportunity led to a trial resulting in a conviction on more serious charges or the imposition of a more severe sentence." *Id.* Furthermore, "as a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused. When defense counsel allow[s] the offer to expire without advising the defendant [of the offer] or allowing him to consider it, defense

---

[3] Petitioner's counsel disputes these allegations. (*See* ECF No. 20-1, Declaration of Kathy Fleming ("Fleming Decl." at ¶¶ 7-12).

counsel [does] not render the effective assistance the Constitution requires." *Missouri v. Frye*, 132 S. Ct. 1399, 1408 (2012). "To show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability they would have accepted the plea offer had they been afforded effective assistance of counsel." *Id.* at 1409. The Court finds that the issues surrounding plea negotiations are properly addressed in a hearing, and therefore will hold a hearing on Ground Four of the Motion prior to rendering a decision.

## 2. Ineffective Assistance during Suppression Hearing (Ground Ten)

Petitioner claims that defense counsel was ineffective during suppression proceedings for two reasons. First, he appears to argue that Ms. Fleming erred by not having Petitioner and his wife testify at the suppression hearing. Pet. at 31-32. Second, he argues that counsel was constitutionally ineffective for failing to preserve certain suppression claims for appeal. *Id.*

The record reflects that Ms. Fleming and her colleagues filed several pretrial motions, which included multiple rounds of briefing seeking suppression of evidence and statements obtained pursuant to a search warrant executed at Petitioner's medical office and during a search of Petitioner's home and safe. Crim. Dkt. # 108, 115, 119, 120, 134, 176, 192, 202; Fleming Decl. ¶ 13. After conducting hearings to determine the legality of the search of the safe and the voluntariness of Petitioner's post-arrest statements on January 9, 2012, this Court denied these motions on February 7, 2012.[4] Crim. Dkt. #142, 162, 208.

---

[4] Regarding the warrantless search of Petitioner's home, this Court concluded that it was lawful under the doctrine of inevitable discovery because Petitioner's wife gave both oral and written consent to search the house, Crim. Dkt. No. 208 at 4, and that Petitioner consented to opening the safe and was not coerced. *Id.* at 5. Based on the evidence presented at the hearing, this Court further held that Petitioner's post-arrest statements were made after he was given Miranda warnings. *Id.* at 6.

On direct appeal Petitioner asserted that this Court erred in both denying his motions to suppress the fruits of the searches of his home and denying his request for a hearing. The Third Circuit rejected his claim as follows:

> The Government justifies the search of Durante's home based on the consent to search given by Durante's wife. Durante's wife gave oral consent and signed a three-line consent-to-search form. Durante asserts that his wife did not voluntarily consent to the search, but he provides no basis for this assertion beyond her general statement that she did not understand the form. It was not clear error for the District Court to determine that the consent given by Durante's wife was voluntary and thus justified the search of the home. Further, because Durante offered no clear basis for his assertion that his wife's consent was not voluntary, the District Court did not abuse its discretion in denying Durante's request for a hearing on this issue.
>
> Next, Durante challenged the search of the safe in the basement of the home. He requested and was given a hearing on this issue. Durante consented to the search of the safe, but argues that this consent was not given voluntarily because one of the agents implied it could harm Durante in the future if he refused to consent. It was not clear error for the District Court to determine Durante's consent was voluntary under the totality of the circumstances. Thus, the District Court did not err in denying Durante's motion to suppress the fruits of the search of the safe.

*Durante*, 612 F. App'x. at 131.

Petitioner further asserts that counsel first indicated to Petitioner and his wife that they would testify at the hearing but decided against it because "she felt she had made such a wonderful case that further testimony was not needed." Pet. at 31. As a general matter, the decision to call or not to call a witness at trial is "precisely that sort of strategic trial decision that *Strickland* protects from second-guessing." *Henderson v. DiGuglielmo*, 138 Fed. Appx. 463, 469 (3d Cir. 2005) (non-precedential). This Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689.

In his Motion, Petitioner claims that his wife should have testified at the suppression hearing in order to provide evidence that she "was clearly NOT [sic] able to understand" the content of the forms she signed consenting to the search of their home. Pet. at 31. However, that proffered testimony mirrors the certification submitted by Petitioner's wife during suppression proceedings. The Third Circuit found that Mrs. Durante's certification did not provide a clear basis to find that her consent was not voluntary; thus, this Court did not err in finding that Mrs. Durante consented to the search or in denying a hearing. Likewise, in this proceeding, Petitioner provides no clear basis for his assertion that his wife's consent was not voluntary. As such, under *Strickland*, Petitioner fails to show that counsel was deficient for failing to call his wife as a witness and that he was prejudiced in any way by this decision.

Petitioner similarly contends that if he had testified at the suppression hearing, he could have contested the validity of his written *Miranda* waiver. Pet. at 31-32; *see* Crim. Dkt. #162 at 10. In that regard, he appears to claim that the agents who questioned him engaged in a "cover[ ] up" regarding when Petitioner signed the waiver. Pet. at 31-32. Here, Plaintiff has not overcome the presumption that counsel's decision not to call him as a witness at the suppression hearing was a sound strategy, particularly in light of the record showing that counsel vigorously litigated the suppression issues and the risk associated with putting Petitioner on the stand at the suppression hearing.[5] For these reasons, the Court finds that counsel was not deficient for not calling Petitioner as a witness at the suppression hearing.

---

[5] Allowing Petitioner to testify at the suppression hearing carried some risk. Although the Supreme Court has held that a defendant's suppression testimony is not admissible "at trial on the question of guilt or innocence" *Simmons v. United States*, 390 U.S. 377, 390 (1968), the Court left open the question of whether the Government may, consistent with the Fifth Amendment, use a defendant's suppression hearing testimony to impeach him at trial. *See United States v. Salvucci*, 448 U.S. 83, 93-94 (1980) ("This Court has not decided whether *Simmons* precludes the use of a defendant's testimony at a suppression hearing to impeach his testimony at

Citing to the Third Circuit's affirmance of his conviction, Petitioner also criticizes counsel for failing to preserve for appeal the claim that he was entitled to an "evidentiary hearing" regarding "the search of his home, the 'lapse of time' between the [Miranda] warnings and his post-search confession, and his reference to his attorney" while being questioned by law enforcement. Pet. at 31 (quoting *Durante*, 612 F. App'x at 132). Petitioner fails to provide any reasons for why the failure to have an evidentiary hearing on these issues prejudiced him. As a result, his argument fails the second prong of *Strickland*.

### 3. Failure to Challenge the Handwriting Expert and Admission of Prescriptions (Ground Seven)

Petitioner also argues that his counsel "did not challenge" the testimony of the Government's handwriting expert, who opined at trial that at least 33 prescriptions introduced as evidence were written by Petitioner. Pet. at 24. On February 27, 2012, before the trial commenced, counsel filed a "Motion to Exclude [The] Government's Handwriting Expert" on the basis of alleged deficiencies under Federal Rule of Evidence 702 and Federal Rule of Criminal Procedure 16. See Crim. Dkt. 231. The motion argued, among other things, "that the Government's proffered handwriting expert testimony failed *Daubert's* reliability requirement and that the Government violated its Rule 16 discovery obligations with respect to the expert handwriting report and materials." Fleming Decl. ¶ 17; Crim. Dkt. 231. Based on that motion,

_____

trial."). Although the Third Circuit has not squarely addressed the issue, every Circuit to do so has allowed impeachment use of a defendant's suppression hearing testimony. *See United States v. Mitchell*, 2015 WL 5886198, at *2-4 (E.D. Pa. Oct. 7, 2015) (collecting cases and finding that defendant's suppression testimony could be used for impeachment); *see also Reinert v. Larkins*, 379 F.3d 76, 96 n.5 (3d Cir. 2004) (noting that various courts have held "that such testimony is admissible as evidence of impeachment"). Moreover, the Supreme Court has held that a defendant's statement obtained in violation of *Miranda*, although inadmissible as substantive evidence, may also be used to impeach the defendant at trial. *See Harris v. New York*, 401 U.S. 222, 225-26 (1971). Thus, even if excluded as substantive evidence, a defendant's statement obtained in violation of Miranda may have come in to impeach him if he testified.

this Court conducted a *Daubert* hearing midtrial and ultimately allowed the Government to call its handwriting witness. *See* Crim. Dkt. 353; Fleming Decl. ¶ 17; *see also U.S. v. Durante*, 2012 WL 1232406, at *1 (D.N.J. Apr. 12, 2012). Moreover, contrary to Petitioner's claims, *see* Pet. at 24, after the Government rested, counsel successfully moved to strike 477 prescriptions from evidence based upon a lack of foundation. In other words, trial counsel made every argument that Petitioner claims he wanted her to make.

Petitioner also argues that the Government failed to disclose evidence that some of the prescriptions attributed to him were actually forgeries created by his co-defendant Abato. *Id.* at 24-25. Petitioner already raised this exact argument in his Rule 33 motion. *See Durante*, 689 F. App'x at 694-55. He is thus barred from litigating it through his § 2255 motion. *DeRewal*, 10 F.3d at 105 n.4; *Barton*, 791 F.2d at 267. As the Third Circuit held, there is no evidence that the Government withheld any exculpatory evidence, including evidence of forged prescriptions, from Petitioner. *Durante*, 689 F. App'x at 695.

### 4. Failure to Adequately Evaluate the Audiotapes Played at Trial (Ground Five)

Petitioner's next complaint pertains to audio recordings of conversations that took place between (1) Petitioner and an undercover agent, and (2) Petitioner and Domando. *See* Pet. at 18. From these recordings, a jury could have found that Petitioner knew Domando was reselling the prescriptions at a substantial profit. In a February 2011 recording, Durante stated, "I just know because my friend does the same thing you do. He sells these for a thousand to twelve hundred dollars a bottle." Durante, referring to prescriptions he provided to Domando over the previous week, then stated "[s]o two last week, four this week – you should have six thousand dollars in your pocket," adding, "I know what people do with these things. You gotta have at least twelve, fifteen thousand dollars a month of income here." Durante was also captured on tape accepting

$300 from Domando in exchange for prescriptions, as well as $100 for an extra prescription he sold to an undercover agent.

Petitioner claims that after those recordings were played for the jury, Ms. Fleming told him that she "didn't realize how bad those tapes were." *Id.* Petitioner appears to assert that counsel's trial strategy for dealing with the tapes amounted to ineffective assistance of counsel. According to counsel, before the tapes were played in court, Petitioner "listened to these recordings in" his counsel's offices, "corrected the transcripts of the recordings," and "reviewed the recordings and draft transcripts" of the recordings with counsel. Fleming Decl. ¶ 15. The record reflects that Petitioner and his counsel participated in "several hearings related to some of the recordings before the jury heard them." *Id.* ¶ 16. Counsel acknowledges that she believed that when the Government played the recordings "in the courtroom for the jury, the content of the recordings coupled with the text of the Government's transcripts being exhibited in real time on a screen, had a particularly negative effect on Petitioner's case." *Id.*

Notwithstanding that counsel may underestimated the impact of the tapes and transcripts on the jury, it is clear from the available record that counsel reviewed the tapes, litigated the admissibility of the transcripts, and put on a vigorous defense that disputed the government's interpretation of the Petitioner's conduct on the tapes, as well as the accuracy of the government's transcripts in key spots. That counsel could not eliminate the damaging effects of the tapes at trial does not amount to ineffective assistance. Indeed, this Court at sentencing explained that the tape recordings were "devastating evidence. All one has to do is listen to them. As [the prosecutor] suggested in his sentencing, the jury could very easily have convicted upon those tape recordings by themselves." Crim Dkt. No. 504, Sentencing Tr. At 58.

The Court notes that, in the end, the evidence against Dr. Durante was overwhelming, bolstered not only by the tape recordings, but also by his issuance of prescriptions for thousands of pills beyond what any legitimate patient could possibly require. In short, assuming, *arguendo*, that the case could have conceivably been better tried (and the Court does not find that to be the case), there is not the slightest possibility that the outcome would have been different.

Echoing his arguments in Ground Six below, Petitioner argues that counsel could have counteracted the damage caused by the recording by, among other things, introducing evidence that Domando and Abato were part of his extended family, and that Domando had been a patient of Petitioner's father-in-law for several decades prior to the conspiracy, and Petitioner, therefore, trusted him. Pet. at 18-19. Such evidence could have equally strengthened the Government's argument that Domando and Petitioner engaged in the drug conspiracy through the trust they developed during their long-standing relationship. Thus, choosing not to make this argument did render counsel constitutionally ineffective, particularly in light of the overwhelming evidence against Petitioner.[6] Similarly, Petitioner argues that counsel was ineffective for failing to present evidence that Petitioner had discharged approximately 15 patients from his practice for failing to comply with the rules of pain management. Even if counsel did fail to present this evidence, it does not amount to ineffective assistance in light of the overwhelming evidence against Petitioner.

For these reasons, the Court finds that Petitioner's trial strategy arguments in connection with the tapes fail on both prongs of *Strickland*.

---

[6] Petitioner also appears to argue that his counsel should have realized before trial that the tapes were too damaging to counteract, and should have presented a defense showing that the conspiracy at the time the tapes were created. This strategy, however, would dramatically undermine Petitioner's overall defense by admitting that he was part of the conspiracy.

**5. Failure to Call Petitioner's Codefendants at Trial (Ground Six)**

Next, Petitioner alleges that counsel was ineffective for choosing not to call his co-defendants Abato and Domando as defense witnesses at trial after the Government chose not to call them. Pet. at 21-22. Petitioner asserts that defense counsel could have impeached Defendant Abato after third-hand statements were admitted through his son. Petitioner further asserts that Domando would have testified that he had brought patients to Durante's practice and his father-in-law's practice for many years and that Petitioner had no knowledge of Domando's illegal schemes and had been pressured by the government to change his story to fit the government's case. According to Petitioner, Domando also owed him money and could have explained the payment to Petitioner.

Petitioner's assertions are sheer speculation and he has provided no evidence that his codefendants' testimony would have been helpful to his defense and would not have further strengthened the government's case, particularly in light of Petitioner's decision not to testify. As such, Petitioner fails to show that there is a reasonable probability that the outcome would have been different if counsel had called his codefendants as witnesses.[7]

Furthermore, the decision not to call particular trial witnesses is "precisely the type of strategic trial decision that *Strickland* protects from second-guessing." *DiGuglielmo*, 138 Fed. Appx. at 469; *see Pavel v. Hollins*, 261 F.3d 210, 220 (2d Cir. 2001) (noting that "[t]he

---

[7] Petitioner principally asserts that counsel should have called Domando and Abato as witnesses to establish that these individuals had a long history of referring (presumably legitimate) patients to his practice and that Petitioner had helped both men financially and emotionally. Petitioner asserts that this information would have counteracted the government's portrayal of him as a greedy doctor selling prescriptions. Again, Petitioner fails to provide any proof that these witnesses, who were cooperating with the government, would have testified in this manner, and also fails to show that there is a reasonable probability that the outcome would have been different had this information been presented to the jury.

Constitution does not oblige counsel to present each and every witness that is suggested to h[er]"). Because Petitioner's codefendants were cooperating with the government, the decision not to call them as witnesses for the defense appears to be an objectively reasonable strategic decision. With respect to strategy, the record also reflects that counsel emphasized in closing the government's failure to call these codefendants, suggesting that their absence amounted to a failure to prove the case against Petitioner. *See* Crim. Dkt. No. 503 at 153.

### 6. Representation at Sentencing (Ground Three)

Petitioner also claims that counsel was constitutionally ineffective for failing to adequately advocate on his behalf at sentencing. He principally argues that counsel did not contest the number of pills attributable to him, and did not identify pills that were prescribed for a legitimate medical purpose. Pet. at 11-12. To the contrary, Counsel raised both of these arguments before and during sentencing. In a lengthy letter submitted to the U.S. Department of Probation on August 14, 2013, counsel asserted that only "4,780" of the "83,848 pills" identified by Probation were attributable to Petitioner. PSR Addendum, at 35. Counsel supported that claim with a detailed chart spanning three pages. *Id.* Counsel letter also claimed, among other things, that Petitioner denied providing patients with prescriptions "outside the usual course of professional medical practice and not for a legitimate medical purpose." *Id.* at 37-38. At Petitioner's sentencing hearing, counsel reiterated many of these same arguments. Crim Dkt. No. 504. Thus, counsel was clearly not ineffective for advocating the precise claims that Petitioner repeats in his § 2255 motion.

Counsel also succeeded in arguing for a variance that was <u>99 months</u> below Petitioner's guideline range. Thus, "[n]o reasonable argument can be made that counsel provided ineffective assistance at sentencing." *Francois v. United States*, 2017 WL 349283, at *4 (D.N.J. Jan. 24,

2017) (finding no ineffective assistance of counsel at sentencing where counsel's argument led to the court granting a significant downward departure).

### b. Petitioner's Other Challenges to his Sentence (Grounds One, Eight, and Nine)

Petitioner attempts to challenge his prison sentence on three grounds, claiming that: (1) his sentence is unfairly disproportionate to that of his co-defendants; (2) his guideline calculation should be reduced by two points resulting in a lower sentence; (3) he is entitled to credit from the Bureau of Prisons ("BOP") for time served on home confinement before sentencing. He also contests the financial portion of his sentence by arguing that the Court's forfeiture order was excessive. The Court denies these claims as procedurally defaulted and meritless.

In Ground One, Petitioner argues that his sentence is unfairly disproportionate to those of his co-defendants—all of whom pleaded guilty. Pet. at 5. In Ground 8, he claims to be entitled to credit for time served on home confinement prior to sentencing. *Id.* at 27. Lastly, in Ground Nine, he asks the Court to shorten his sentence by reducing his Sentencing Guidelines by two points. *Id.* at 29.

All of these claims are procedurally defaulted. The procedural default doctrine is clear: a petitioner may not bring a § 2255 motion if he could have, but did not, raise the issue on direct appeal. *United States v. Frady*, 456 U.S. 152, 165 (1982); *see United States v. Essig*, 10 F.3d 968, 979 (3d Cir. 1993). A petitioner's inability to show good cause for not raising a sentencing issue on direct appeal precludes collateral review of that claim. *See Felix v. Virgin Islands Gov't*, 702 F.2d 54, 57 (3d Cir. 1983). And, while an attorney's failure to raise a claim on direct appeal can constitute cause for a procedural default, that occurs only in the rare case where counsel's failure amounts to ineffective assistance of counsel in violation of the Sixth Amendment. *See Hodge v. United States*, 554 F.3d 372, 379 (3d Cir. 2009). Here, the sentencing claims at issue

were readily available to him on direct appeal. Nevertheless, he failed to raise any of them. *See generally Durante*, 612 F. App'x 129. Thus, he is procedurally defaulted from arguing them in his § 2255 petition. *See Frady*, 456 U.S. at 167-68; *Essig*, 10 F.3d at 979.

These sentencing claims are also wholly lacking in merit. Sentences may be reduced under § 2255 when the sentence imposed was in violation of the Constitution or the laws of the United States or exceeded the maximum penalty authorized by law. 28 U.S.C. § 2255. Thus, a petitioner may generally seek relief only by alleging a jurisdictional problem, a constitutional violation, or some other "fundamental defect which inherently results in a complete miscarriage of justice, [or] an omission inconsistent with the rudimentary demands of fair procedure." *United States v. Horsley*, 599 F.2d 1265, 1268 (3d Cir. 1979) (citation omitted); *Judge v. United States*, 119 F. Supp. 3d 270, 280 (D.N.J. 2015). Here, none of Petitioner's sentencing claims come close to meeting this threshold and are denied as meritless.[8]

Defendant attempts to blame his procedural default on his counsel, who he claims was constitutionally ineffective for not raising them on direct appeal. Pet. at 4, 26. Because there is no merit to any of Petitioner's arguments pertaining to his prison sentence, his trial counsel could not be ineffective for failing to raise them on appeal. *See Real v. Shannon*, 600 F.3d 302, 310 (3d

---

[8] Petitioner's claim that the BOP should give him credit for the time he served on home confinement between his conviction and sentencing is not cognizable in a § 2255 motion. *See* Pet. at 27 (Ground Eight). It is well settled that a claim pertaining to the amount of time a prisoner must serve in custody relates to the execution of a sentence, not its substance. *See, e.g., Barden v. Keohane*, 921 F.2d 476, 478 (3d Cir. 1990). Thus, such a claim must be brought as a habeas corpus petition filed under 28 U.S.C. § 2241, not § 2255. *Woodall v. Fed. Bureau of Prisons*, 432 F.3d 235, 241 (3d Cir. 2005). In addition, § 2241 petitions must be brought in "the district of confinement." *Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004). As a result, this Court lacks jurisdiction to entertain Petitioner's argument regarding pre-sentence credit on his term of imprisonment.

Cir. 2010) (counsel not ineffective for failing to raise a meritless claim); *Parrish v. Fulcomer*, 150 F.3d 326, 328 (3d Cir. 1998) (same).

### c. Petitioner's Challenge to the Financial Component of his Sentence (Ground Two)

Finally, Petitioner contests the financial component of his sentence, namely this Court's forfeiture judgment. He argues that the forfeiture order was "an excessive fine under the Eighth Amendment." Pet. at 7. In a subsequent letter the Court dated June 27, 2017, Petitioner argued that, under the Supreme Court's June 5, 2017 decision in *Honeycutt v. United States*, 137 S. Ct. 1626, 1630 (2017), the Court erred in imposing a forfeiture judgment on him in the amount of $629,461 because, among other things, the Court did not make a finding that Petitioner personally obtained $629,461 from the conspiracy. *See* Crim. Dkt. No. #575.

In *Honeycutt* the Supreme Court recognized that the forfeiture provisions in 21 U.S.C. § 853—which are the provisions applicable in this case—do not impose joint and several liability on each member of a conspiracy. Rather, the Court held that Section 853(a)(1) limits criminal forfeiture to property that a defendant actually acquired as a result of his crime; it does not make a defendant liable for the forfeiture of property obtained by someone else. *Honeycutt*, 137 S. Ct. at 1635.

*Honeycutt* notwithstanding, Petitioner's claims are procedurally barred because, as noted above, § 2255 does not permit challenges to non-custodial punishments such as forfeiture. *See United States v. Ross*, 801 F.3d 374, 380 (3d Cir. 2015) ("monetary component of a sentence" does not satisfy the "in custody" requirement of federal habeas statutes). Section 2255 authorizes only post-conviction challenges to the legality of a petitioner's "custody." Petitioners have no right to use § 2255 to challenge non-custodial components—such as forfeiture—of their sentences. *See, e.g., Kaminski v. United States*, 339 F.3d 84, 86-89 (2d Cir. 2003); *United States*

*v. Kramer*, 195 F.3d 1129, 1130 (9th Cir. 1999); *Blaik v. United States*, 161 F.3d 1341, 1342-1343 (11th Cir. 1998). Thus, § 2255 does not authorize challenges to criminal forfeiture. *Winkelman v. United States*, 494 F. App'x 217, 220 (3d Cir. 2012) (per curiam) (non-precedential); *see also United States v. Golden*, 2005 WL 3434004, at *5 (E.D. Pa. Dec. 12, 2005) (holding that the district court lacked jurisdiction to hear a challenge to the forfeiture order under § 2255 because forfeiture is not a sufficient restraint on liberty to satisfy the "in custody" requirement for habeas corpus relief) (citations omitted). Accordingly, none of Petitioner's arguments pertaining to the Court's forfeiture order are cognizable in a § 2255 claim.

Petitioner asserts that he should be able to raise this claim in his § 2255 motion because his counsel "failed" him by not arguing it on direct appeal. Pet. at 10. Counsel is not obligated to "raise every non-frivolous claim but rather may select among them in order to maximize the likelihood of success on appeal." *Showers v. Beard*, 635 F.3d 625, 634 (3d. Cir. 2011) (citing *Smith v. Robbins*, 528 U.S. 259, 288 (2000)); *see also Jones v. Barnes*, 463 U.S. 745, 751-52 (1983); *Buehl v. Vaughn*, 166 F.3d 163, 174 (3d Cir. 1999). To that end, appellate counsel can generally be found ineffective only when she has ignored issues that are clearly stronger than those presented. *See Robbins*, 528 U.S. at 288. At the time counsel filed Petitioner's direct appeal in this case, controlling precedent clearly dictated that joint-and-several liability applied to forfeiture where, like here, there were reasonably foreseeable proceeds obtained by members of a drug conspiracy. *See United States v. Pitt*, 193 F.3d 751, 765 (3d Cir. 1999); *see also United States v. Miller*, 645 F. App'x 211, 226–27 (3d Cir.), *cert. denied*, 137 S. Ct. 323 (2016). Thus, counsel was not ineffective for failing to challenge the Court's forfeiture order on appeal.[9]

---

[9] Petitioner's complaint that the Government seized money in excess of the Court's forfeiture order, *see* Pet. at 6, is moot because that money was returned to Petitioner's family in the summer of 2017. Fleming Decl. ¶ 29; *see* Crim. Dkt. #530, 570.

Petitioner also appears to assert that an alternate procedural vehicle – audita querela – entitles him to relief. *See* ECF No. 29. Courts have held, however, that the rule in *Honeycutt* "does not apply retroactively to convictions that became final prior to its adoption." *E.g., United States v. Potts*, No. 01-457-3, 2018 WL 5296376, at *2 (E.D. Pa. Oct. 25, 2018) (motion brought audita querela), aff'd, No. 18-3470, 2019 WL 1458799 (3d Cir. Apr. 2, 2019); *see also, e.g. United States v. Concepcion*, No. 15-15, 2019 WL 1760520, at *2 (D.N.J. Apr. 22, 2019) (finding no procedural vehicle for criminal motion challenging forfeiture order where movant brought motion years after forfeiture order was imposed).[10]

## V.     <u>CONCLUSION</u>

The Court will hold a hearing on Ground Four (ineffective assistance during plea negotiations) and reserve judgment on that claim for relief.   Petitioner's remaining claims are either procedurally barred, lacking in merit, or both. 28 U.S.C. § 2255; *see also United States v. Booth*, 432 F.3d 542, 545–46 (3d Cir.2005); *United States v. McCoy*, 410 F.3d 124, 131 (3d Cir. 2005). With respect to the remaining claims, the Court denies a certificate of appealability as reasonable jurists would not find the Court's assessment debatable. *See* 28 U.S.C. § 2253(c)(2) ("A certificate of appealability is appropriate only if the petitioner "has made a substantial showing of the denial of a constitutional right."); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

---

[10] Petitioner points to the decision in *United States v. Crews*, No. 2:10-00663 (ECF No. 29), which is not binding on this Court. The *Crews* court granted a defendant's motion for reconsideration of a final forfeiture judgment brought under the All Writs Act in light of the *Honeycutt* decision. However, the Defendant in *Crews* had preserved his forfeiture claim, preventing waiver. *See id.* ("conclud[ing] that the writ of audit querela is available to Defendant in these circumstances, since Defendant preserved this issue by raising it on appeal and there has been an intervening change in the applicable law since his appeal was denied). Thus, even if the Court agreed with that decision, Petitioner would not be entitled to relief because he failed to preserve this claim.

An appropriate Order follows.

    s/ Stanley R. Chesler
Stanley R. Chesler, U.S.D.J.

DATED:__January 13, 2020_____